UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
**JACK BENNETT**,

                               **Plaintiff,**                    Case No. 15-cv-5490

                               **-against-**

**INDEPENDENT LIVING, INC.,**                    **COMPLAINT**
                                                              **Jury Trial Demanded**

                               **Defendant.**
-----------------------------------------------------------------------x

      Plaintiff, by his attorneys, Tuckner, Sipser, Weinstock & Sipser, LLP, respectfully complains as follows:

## PRELIMINARY STATEMENT

1.     This is an action arising under the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), as well as under Article 15 of the New York State Executive Law §§ 290 *et seq*. ("NYS Human Rights Law" or "NYSHRL"), seeking declaratory and injunctive relief and damages to redress the harms and losses Plaintiff has suffered as a result of being discriminated against by Defendant on the basis of his actual or perceived disability.

## JURISDICTION AND VENUE

2.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this case arises under federal law, specifically the ADA, and the Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over Plaintiff's related state claims arising out of the same controversy under the NYS Human Rights Law.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b), as the events giving rise to the claim occurred within Orange County, NY.

## PARTIES

4. Plaintiff Jack Bennett is a natural person and resident of the State of New York.

5. Defendant Independent Living, Inc. ("Independent") is a New York not-for-profit corporation and an "Employer" as provided under the ADA and the NYSHRL.

## PROCEDURAL PREREQUISITES

6. Plaintiff filed charges of employment discrimination against Independent with the US Equal Employment Opportunity Commission's ("EEOC") New York District Office.

7. Plaintiff received a "Notice of Suit Rights" from the EEOC, dated April 20, 2015, with respect to his charges of discrimination, entitling him to commence a civil action within 90 days of his receipt of the notice.

## ALLEGATIONS OF FACT

8. Plaintiff commenced employment with Independent in or about December 2011 as the Regional Director of Recovery Centers.

9. Plaintiff was a consistently hard working, diligent, and dedicated employee, highly valued for his skills, exemplary performance, and devotion to Independent and its organizational mission to enhance the quality of life for individuals with disabilities.

10. In January 2013, Plaintiff received a promotion and accompanying pay raise to

serve as the regional director for two additional New York counties.

11.     Plaintiff's job duties included travel to Independent facilities located in the contiguous Mid-Hudson NY counties of Orange, Dutchess, Rockland and Ulster.

12.     Plaintiff suffers from antiphospholipid syndrome ("APS"), also known as positive lupus anticoagulant or Hughes syndrome, an immune system disorder which, when active, causes dangerous thickening of the circulating blood, resulting in clumping blood platelets.

13.     Specifically, APS-related blood clotting causes thrombosis, heart attacks and strokes.

14.     On or about March 14, 2014, while at work and traveling in an automobile with Independent's Executive Director Douglas Hovey ("Hovey"), Plaintiff suddenly experienced symptoms consistent with a stroke, such as slurred speech, confusion, visual impairment, and eventual loss of consciousness.

15.     Hovey transported Plaintiff to the hospital where he was diagnosed with a stroke.

16.     As a result, Plaintiff was hospitalized and required daily rehabilitation and speech therapy.

17.     As a reasonable accommodation of his disability, Plaintiff commenced a protected medical leave of absence from his employment with Independent.

18.     Plaintiff experienced significant recovery throughout his hospitalization period and was discharged on or about April 2, 2014.

19.     Given his improved medical condition, Plaintiff's physicians recommended follow-up rehabilitation therapy on an outpatient basis.

20.     Plaintiff was eager to return to the workplace as soon as possible so he spoke with Hovey to discuss the date he could return to work at Independent.

21.     In lieu of this required interactive discussion, Hovey urged Plaintiff to enroll in an inpatient rehabilitation program because of his "brain damage," a pejorative and discriminatory characterization made by a non-physician.

22.     Plaintiff replied that he was doing well and did not require inpatient treatment, which was deemed medically unnecessary by his treating physicians and therefore would not have been covered by insurance, even if Plaintiff had elected such treatment.

23.     Hovey nevertheless insisted, so in order to cooperate with his demands, Plaintiff relented and started an inpatient rehabilitation program.

24.     After approximately six weeks, Plaintiff completed the inpatient program.

25.     At the end of May 2014, Plaintiff telephoned Hovey to inform him that he had completed the required program and was again ready, willing and able to return to work.

26.     Hovey once again contrived to convince Plaintiff to seek additional inpatient treatment, stressing that it would be "good" for him, and claiming that there was a "new program" that Plaintiff could benefit from, despite the fact that the purported "new program" was identical to the program Plaintiff had just completed.

27.     Plaintiff declined this illegal demand, repeating his request to return to work.

28.     Independent ignored Plaintiff's request to return to work. Instead, it sent Plaintiff a termination notice dated June 1, 2014, in which it incorrectly and illegally advised Plaintiff that his leave under the Family and Medical Leave Act would end on June 6.

29.     Independent further stated that it did not anticipate Plaintiff's readiness to return to work the following week, and that it would regard any leave beyond the statutory 12-week FMLA period as unreasonable, rejecting all interactive discussions on the subject of further reasonable accommodation of Plaintiff's disability under applicable law.

30.     Irrespective of the fact that Plaintiff was actually ready to return to work, Independent failed to consider and discuss as required by federal and state law, whether a brief additional leave period was medically required to permit Plaintiff to continue performing the essential functions of his job, and if so, whether such an accommodation would present an undue hardship to Independent's operations.

31.     Taken aback by the termination letter, Plaintiff immediately contacted Independent to question the reason for this adverse employment action given his unlimited readiness to return to fulfilling the essential functions of his position.

32.     Independent responded that Plaintiff's unlawful termination was a "formality" and that it required medical clearance before it could restore Plaintiff to his position.

33.     Plaintiff's family physician, Richard Carlino, M.D., promptly provided the requested documented medical clearance for Plaintiff to return to work without limitations, effective June 3, 2015, pending the evaluation of his driving ability.

34.     On June 5, 2014, Plaintiff successfully passed a two-hour road test and

completed cognitive testing without errors, confirming that he was fully capable of performing his job duties, *without any further accommodation*.

35.     However, despite competent medical evidence supporting Plaintiff's return to work, Independent made no effort to restore Plaintiff to his job.

36.     Rather, it presented him with ever increasing demands for medical documentation in an obvious effort to frustrate his return to work.

37.     First, Independent required Plaintiff's to complete its own "Fitness for Duty Evaluation Form," obliging Plaintiff to confirm his ability to perform various duties.

38.     Although the demand for this form was unnecessary and duplicative, as Plaintiff had already been cleared to return without restrictions, he complied and completed it.

39.     Plaintiff submitted the requested form endorsed by his internal medicine physician, James Rubin, M.D., who again certified that Plaintiff was able to return to work without restrictions or limitations, effective June 13, 2014.

40.     Now that Plaintiff had met Independent's latest demands, Independent chose to once again raise the threshold for Plaintiff's return to work, demanding he submit to an Independent Medical Examination ("IME") by a physician of its choosing despite the lack of any objective justification for such an examination, so Plaintiff's Catch-22 continued.

41.     While awaiting the scheduling of his IME, on July 1, 2014, Plaintiff underwent a follow-up examination by a board certified neurologist and specialist in vascular neurology, Tomoko Kitago, M.D., at the Department of Neurology, Division of Stroke, of

the Neurological Institute of the New York Presbyterian Hospital, part of Columbia University Medical Center.

42.     Dr. Kitago noted some residual impairment in Plaintiff's speech but confirmed significant improvement in his abilities, recommending that Plaintiff return to his job.

43.     Plaintiff was again cleared to resume his job duties effective July 2, 2014.

44.     Although the positive examination by a prominent stroke specialist should have eliminated any residual concerns Independent may have had concerning Plaintiff's return to work and the need for Plaintiff to undergo an IME, Independent again unreasonably and illegally refused to reinstate Plaintiff to his position due to discriminatory animus.

45.     Independent insisted Plaintiff still undergo the IME they had previously requested, in the absence of any legitimate and non-discriminatory business reason for doing so and contrary to the conclusive uniform medical opinion of Plaintiff's treating physicians.

46.     At Independent's behest, on July 8, 2014, Plaintiff submitted to a brief examination by Patrick Hughes, M.D. at The IMA Group in Poughkeepsie, NY.

47.     Dr. Hughes did not perform additional tests to evaluate Plaintiff's abilities but merely reviewed the set of information provided to him by Independent, as well as statements from Independent's HR department, claiming Plaintiff had trouble speaking.

48.     Notably, Independent did not provide the results of Plaintiff's driving and

7

cognitive tests for Dr. Hughes to review.

49. Based on the information provided, Dr. Hughes recommended that Plaintiff continue his leave, citing a purported speech impairment reported by Independent.

50. Independent sought Dr. Hughes' report to discriminatorily deny Plaintiff his job, without engaging in the interactive process to determine what accommodations, if any, would permit Plaintiff to return to work without causing Independent undue hardship.

51. By letter dated August 9, 2014, Independent informed Plaintiff that his position was no longer available to him.

52. In response, Plaintiff visited Independent in person to meet with Hovey to reiterate that he was able and eager to return to work. He also asked Hovey if there was an alternate position available, as Independent had replaced Plaintiff during his absence.

53. Hovey responded that Independent would look into alternate positions, but urged Plaintiff to stay out of work for another six months.

54. One week later Independent informed Plaintiff that no positions were available.

55. Independent finalized Plaintiff's termination by letter dated October 3, 2014.

## FIRST CAUSE OF ACTION
**(Discrimination under the ADA)**

56. The ADA, at 42 U.S.C. § 12112 (a), provides that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

8

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

57.     By reason of the foregoing, Independent engaged in an unlawful employment practice prohibited by the ADA, by terminating and otherwise discriminating against Plaintiff because of his disability and/or perceived disability.

## SECOND CAUSE OF ACTION
### (Discrimination under NYS Human Rights Law)

58.     The NYS Human Rights Law, § 296(1)(a), provides that it shall be an unlawful discriminatory practice:

> For an employer … because of an individual's … disability … to bar or discharge from employment such individual or to discriminate against such individual in … terms, conditions or privileges of employment.

59.     By reason of the foregoing, Independent engaged in an unlawful discriminatory practice in violation of the NYS Human Rights Law, § 296(1)(a), by terminating and otherwise discriminating against Plaintiff based on his disability and/or perceived disability.

## INJURY AND DAMAGES

60.     As a result of Independent's unlawful discriminatory employment practices, Plaintiff has suffered injury to his reputation, loss of back and future income and benefits, financial hardship, extreme emotional distress, as well as ongoing pain and suffering.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA and the NYS Human Rights Law, by discriminating against Plaintiff as a result of his actual or perceived disability.

B. Making Plaintiff "whole" for any past and future economic losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation;

D. Awarding Plaintiff attorneys' fees, costs and expenses incurred in the prosecution of the action;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, to remedy Defendant's unlawful employment practices.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

Dated: New York, NY
July 14, 2015

**Tuckner, Sipser, Weinstock & Sipser, LLP**

By: /s/ William J. Sipser
William J. Sipser (WS 1781)
Attorneys for Plaintiff
120 Broadway, 18th Floor
New York, NY 10271
212.766.9100
www.womensrightsny.com

Case 7:15-cv-05490-KMK   Document 1   Filed 07/14/15   Page 11 of 11

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

Dated: New York, NY
July 14, 2015

**Tuckner, Sipser, Weinstock & Sipser, LLP**

By: /s/ William J. Sipser
William J. Sipser (WS 1781)
Attorneys for Plaintiff
120 Broadway, 18th Floor
New York, NY 10271
212.766.9100
www.womensrightsny.com